UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   -v-                                            CASE NO. : 16-CR-086 (BKS)

BROK CHASE,
                  Defendant.

---

# SENTENCING MEMORANDUM

DATED: June 30, 2016                          Respectfully submitted,

                                                             LISA A. PEEBLES
                                                              Federal Public Defender
                                                              Bar Roll No.: 507041
                                                              Office of the Federal Public Defender
                                                              4 Clinton Square, 3rd Floor
                                                              Syracuse, New York 13203
                                                              (315) 701-0080

**PRELIMINARY STATEMENT**

On March 21, 2016, Brok Chase pled guilty to a four-count information charging him with Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a). Brok Chase is scheduled for sentencing on July 22, 2016.

The United States Probation Department prepared a Presentence Investigation Report (*hereinafter* "PSR") on June 7, 2016 in anticipation of Brok Chase's sentencing. According to the PSR, his advisory guideline range of imprisonment is 1,440 months' imprisonment (120 years) based upon a total offense level of 43 and a criminal history category of I. PSR ¶ 92. Pursuant to 18 U.S.C. § 2251(e), Brok Chase is subject to a mandatory term of 15 years' and a maximum term of 30 years' imprisonment on each count. PSR ¶ 91.

This memorandum is submitted on behalf of Brok Chase in support of a sentence "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C. § 3553(a)(2), and in light of *United States v. Booker,* 543 U.S. 220 (2005). A sentence of 15 years' imprisonment on each count, imposed concurrent with each other, is respectfully requested.

**SENTENCING AFTER *UNITED STATES v. BOOKER***

The Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005) excised the provisions in the Sentencing Statute which made the guidelines mandatory, thus holding the guidelines are merely advisory. Therefore, in determining a sentence, a Court must equally consider the guideline calculations, the unique characteristics of the defendant, as well as, other statutory concerns listed in 18 U.S. § 3553(a), specifically:

   (1)   The nature and circumstances of the offense and the history and characteristics of the defendant;
   (2)   The need for the sentence imposed

1

    (A)    To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)    To afford adequate deterrence to criminal conduct;
    (C)    To protect the public from further crimes of the defendant; and
    (D)    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a).

"A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera,* 550 F.3d 180, 188 (2d Cir. 2008).

### 18 U.S.C. § 3553(a) Factors

### OFFENSE CONDUCT

The offense conduct is fully set forth in the PSR and Brok Chase does not dispute what occurred in this case.

Brok produced sexually explicit images of a minor child using materials affecting interstate commerce. His offenses were discovered after an FBI agent downloaded images of child pornography from an IP address registered to Brok through a peer-to-peer file sharing program.

A federal search warrant was executed at Brok's residence on Fort Drum, New York, where he lived with his wife, 8-year-old stepson, 6-year-old stepdaughter, and 5-year-old son. At the time the warrant was executed, Brok's wife, Elizabeth Chase, was an active member of the United States Army and deployed making Brok the primary caretaker of the children.

Pursuant to the search warrant, Brok's computer and cellular phone were seized from his residence. The FBI agent interviewed Brok's 6-year-old stepdaughter at which time she provided preliminary information about possible sexual contact with Brok. A later forensic

examination of Brok's cellular phone revealed sexually explicit images of Brok's stepdaughter.

*The Offense Conduct Did Not Involve Distribution*

Brok took sexually explicit photographs of V-1, but he never uploaded or distributed the images. PSR ¶ 11. While legislation regarding sexual exploitation of children is intended to prevent various activity associated with child pornography, the legislative history demonstrates that distribution is the target offense. Specifically, Congressional findings reveal an emphasis on the victim impact that is associated with distribution. Pub. L. 104-208, 110 Stat. 3009-26; Pub. L. 110-358, 122 Stat. 4001. Congress noted how "continued existence" of child pornography leads the victim to be "haunt[ed] in future years." Pub. L. 104-208, 110 Stat. 3009-26. Congress has also focused on the "revictimization" that occurs "each time the image is viewed," showing significant concern for the child particularly when the images are shared with other offenders. Pub. L. 110-358, 122 Stat. 4001.

While the production of child pornography is itself inexcusable, the continued harm and revictimization associated with production and later distribution is not present in this case. Brok did not exacerbate the harm of production of child pornography through distribution of the images. As such, the images will have no "continued existence" and the harm Congress wanted to prevent, "revictimization" of the victim through distribution, will not occur with respect to V-1.

## BACKGROUND AND HISTORY OF BROK CHASE[1]

Brok, now 29-years-old, was born in Fargo, North Dakota. His parents have been married for more than 30 years, and he has four siblings. Brok grew up in a military family, causing the family to relocate every 4 to 5 years. Brok's father, Bradford Chase, was a Major in

---

[1] A letter of support from Brok Chase's mother, Lynn Chase, submitted on behalf of Brok Chase, fully outlines his childhood.

the Army and served for 16 years. Brok's mother, Lynn Chase, is a trauma registered nurse at Dartmouth-Hitchcock Medical Center and Bradford Chase works at the same medical center as a project manager.

Bradford Chase's numerous deployments to Iraq, Afghanistan, Libya, and Kuwait caused considerable stress on the entire family. For example, the family lived in seven different locations, North Dakota, Minnesota, Kansas, New York, California, Georgia, and Kuwait, by the time Brok turned 19. Bradford Chase suffered from severe post-traumatic stress disorder due to his military service and he was angry most of the time. At the same time, Brok was suffering from numerous, mental, emotional, and behavioral disorders. In the midst of this dysfunction, Brok's mother was attempting to keep the family together and "fix" the problem with Brok, which became an exercise in futility because she had no knowledge of the root cause of Brok's adverse behavior.

*Abuse and Psychological Impairment*

When Brok was 11-years-old, he was raped by an older boy, whom Brok believes may have been 15-years-old. Brok kept this trauma hidden until he was arrested for the current offense. Riddled with shame, confusion, and humiliation, Brok internalized the trauma from the sexual assault and acted out in destructive ways. Not surprisingly, Brok developed a severe alcohol problem that commenced at the age of 15 and continued to escalate throughout his adult years. Brok also suffered physical and emotional abuse from his father, also an alcoholic, during his formative years. PSR ¶ 75.

As reflected in Brok's acceptance of responsibility statement, following the rape, he began engaging in sexual chats with adults on the internet when he was 11 or 12 years old. PSR

¶ 19.  These adults would provide him with images of child pornography and ask him to engage in sexual acts for them through his webcam.  *Id.*

The detrimental effects of the initial rape, immediately followed by adults grooming him and enticing him to engage in sexual acts on the internet when he was 12-years-old, resulted in several disorders and diagnoses including attention-deficit hyperactivity disorder (ADHD); depression; anxiety; adjustment disorder and depressed mood; bipolar I disorder, mixed; obsessive compulsive disorder (OCD); and low self-esteem manifested by oppositional defiant disorder.  PSR ¶¶ 81-84, Appendix A.

Lynn Chase made several concerted efforts to help her son overcome his numerous psychological issues by having him evaluated by a psychologist and later by Allan Yozawitz, a Diplomate in Clinical Neuropsychology.  Mrs. Chase was only aware of the trauma her son experienced at school and at home.  This included abuse by school officials when he was in the fourth grade.  The school addressed Brok's numerous behavioral disorders by placing him alone in a closet by himself seated at a desk.  PSR ¶¶ 79, 81.  This is where he spent most of his time in the fourth grade.  When Mrs. Chase learned Brok had been placed in a closet because he "fidgeted" in class, she went to the school and asked to see the closet, but was denied access.  Lynn Chase, June 27, 2016, letter.  Upon learning of this treatment, Mrs. Chase removed Brok from this school.  *Id.*  Mrs. Chase speaks of the negative treatment Brok received from his father because of their concomitant emotional disorders.  PSR ¶ 79.  She describes Brok as being in a "pressure cooker environment" at home because his father was under stress in the military and had "zero tolerance" for their son.  *Id.*  Now that she is aware of the sexual abuse Brok endured, she "fully understands why her son acted the way he did during his pre-teen and teenage years."

5

*Id.* This information was the necessary missing link that prevented Brok from receiving the appropriate mental health treatment he so desperately needed.

When Brok was 13, Dr. Yozawitz performed a neuropsychological diagnostic assessment of Brok where he underwent 19 different tests. PSR, Appendix. In the "Summary and Recommendations" portion of the evaluation, Dr. Yozawitz notes, "[i]t is important to recognize that efforts directed as reducing Brok's oppositional defiant behaviors are likely to be unsuccessful until the underlying causes of those behaviors…are effectively treated." PSR, Appendix, p. 8. Brok stood no chance of improvement in light of his treatment providers' lack of knowledge of sexual abuse.

The evaluation provides Brok's history describing him as sensitive to criticism with a "fear of social humiliation, easy embarrassment, impatience, irritability, fearfulness, separation anxiety, low frustration tolerance, temper tantrums, anger, sullenness, belligerence, impulsivity, restlessness (e.g., fidgeting, chewing on fingers), stuttering, difficulty conforming to rules, stubbornness, insubordination (i.e., defiance/disobedience, argumentativeness, sarcasm, and disrespect for authority), poor self-esteem, and low self- confidence." PSR, Appendix, p. 1. His behavior is thoroughly described as aggressive and disruptive with a cursory mention of "sexual preoccupation. PSR, Appendix, p. 2.

At the time of the evaluation, Brok's current emotional state was described as being troubled "by feelings of nervousness and apprehension concerning his ability to meet his father's expectations." PSR, Appendix, p. 3. Brok was stressed about his father returning home from deployment and being "reproached by his mother about his poor academic performance." *Id.* Brok's state of anxiety was described in 15 ways centering on fearfulness, nervousness, dread, restlessness, irritability, and frustration. Equally so with respect to his signs of depression

including, but not limited to, withdrawal, self-depreciative ideation, suicidal ideation, insomnia, and sexual preoccupation. *Id.,* at p. 4.

Studies show that childhood trauma can impact development and function of the human brain. Exhibit A. "Studies of post-traumatic stress disorder (PTSD) have demonstrated that the age at which a child is first traumatized, the frequency of traumatic exposure and the availability (or lack thereof) of caretakers as supportive resources all have a significant impact on the extent of the psychological consequences experienced by the child." Exhibit A, p. 263. Brok had already experienced traumatic events related to his father's abuse and the instability involved with constant relocation prior to his sexual assault.

## *U.S.S.G. § 5H1.3*

Brok's unusual psychological impairment and history of abuse warrant a substantial downward departure from the recommended guideline range of imprisonment. The sentencing guidelines establish that "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions…are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3. The Second Circuit has held that a court may grant a downward departure where "extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense." *U.S. v. Rivera*, 192 F.3d 81, 85 (2d Cir. 1999). There is no question that Brok has a documented history of abuse and psychological impairment preceding the commission of the instant offense.

Things did not improve as he aged. When Brok was 19 and the family was living in Kuwait, Mr. Chase kicked Brok out of the house due to his disruptive and aggressive behavior. PSR ¶ 75. The combination of his home and school environment, mental health condition, and

7

sexual abuse contributed to Brok's alcoholism. PSR ¶ 85. He began drinking at age 15, and heavily drank by age 17. PSR ¶ 85. Alcohol became a means to get relief from his problems and take "a break from reality." PSR ¶ 85. Each time Brok engaged in conduct with V-1, he was intoxicated. PSR ¶ 19. Upon becoming sober and realizing what he had done, he became extremely remorseful and deleted the images. PSR ¶ 19.

### NEED FOR THE PUNISHMENT TO REFLECT THE SERIOUSNESS OF THE OFFENSE AND PROMOTE RESPECT FOR THE LAW

Section 3553(a)(2)(A) instructs the Court to craft a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. A number of factors determine whether a particular sentence is "just." A punishment is 'just' insofar as it 'fit[s] the crime,' and 'reflect[s] the gravity of the defendant's conduct.' *Simon v. United States*, 361 F. Supp. 2d 35, 43 (E.D.N.Y. 2005). (quoting S. Rep. 98-225, 1984 U.S.C.C.A.N. 3182, 3258-59). Senate Report 98-225 explained that the 3553 factors are:

> another way of saying that the sentence should reflect the gravity of the defendant's conduct. ***From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense,*** and the public interest in preventing a recurrence of the offense. From the defendant's standpoint the sentence should not be unreasonably harsh under all the circumstances of the case and should not differ substantially from the sentence given to another similarly situated defendant convicted of a similar offense under similar circumstances.

*A Guideline Sentence Is Effectively Life Imprisonment*

Brok is only 29-years-old, yet the PSR, in essence, recommends a life sentence. The applicable guideline range, as calculated in the PSR, is 1440 months or 120 years. PSR ¶ 92. Sentencing a defendant to likely die in prison is a decision that courts have taken with great scrutiny. As the Seventh Circuit has stated, "there is a worthy tradition that death in prison is not to be ordered lightly, and the probability that a convict will not live out his sentence should

8

certainly give pause to a sentencing court. " *U.S. v. Wurzinger*, 467 F.3d 649, 652 (7th Cir. 2006). A life sentence would deprive Brok the opportunity to rehabilitate himself and rejoin society.

In addition to the clear impact that a sentence amounting to life imprisonment would have on Brok, there is a larger-scale sentencing issue present as well. Namely, by imposing such a harsh sentence in this case, there would be virtually no greater sentence available for harsher crimes including, production *with* distribution of child pornography, kidnapping, or murder. Punishing Brok as severely as a murderer or other more severe offenders disrupts the goal of marginal deterrence, the idea that "the harshest sentences should be reserved for the most culpable behavior." *U.S. v. Brown*, No.13-1706, 2016 WL 3254735, at *1, *8 (2d Cir. 2016). As discussed by the U.S. Supreme Court, "there is a line between homicide and other serious violent offenses against the individual." *Graham v. Florida,* 560 U.S. 48, 69 (2010). Taking into account this spectrum of crimes and their varying degrees of severity, the United States Sentencing Commission has strived to "preserve proportionality" regarding child pornography offenses. United States Sentencing Commission, *The History of the Child Pornography Guidelines* 48 (2009). A sentence amounting to life imprisonment is clearly incongruent with this goal.

Finally, in addition to impeding the goal of deterrence, sentencing Brok to an effective life sentence does not satisfy the objective of incapitation. Even if Brok is released, his probability of recidivism will not be high. *U.S. v. Brown*, No.13-1706, 2016 WL 3254735, at *1, *8 (2d Cir. 2016) (citing studies that demonstrate reduced recidivism with age). Furthermore, Brok would be on federal supervised release and registered as a sex offender upon his release from incarceration. A sentence amounting to life imprisonment is not the only path to prevent Brok from reoffending.

### *The Need for Treatment*

Section 3553(a)(2)(D) requires the Court to look at the defendant's need for "educational or vocational training, medical care, or other correctional treatment in the most effective manner" when imposing a sentence. Brok's background and history clearly illustrate he has suffered severe childhood trauma that unquestionably played a role in his commission of the instant offenses. Changes in sex offender treatment would greatly benefit Brok and mitigate his chances of reoffending.

Brok's mother, a registered nurse specializing in trauma cases, would be actively involved in Brok's psychological treatment upon his release from prison. Mrs. Chase informs that there is a movement amongst psychologists to incorporate trauma-informed care into sex offender treatment programs. Exhibit B. Studies show that "[e]arly maltreatment is commonly believed to create a cycle of abuse in which individuals grow up to repeat behavior witnessed and learned in childhood." Exhibit B, p. 6. Current sex offender treatment programs use confrontational strategies that disempower people like Brok, who were once victimized and are now the offender. Exhibit B, p. 7. "Historically, sex offender treatment programs have emphasized relapse prevention (RP) models focusing on triggers, high-risk situations, and distorted thinking in a cycle of abusive behavior (Laws, 1989; Laws, Hudson & Ward, 2000)." Exhibit, C, p. 14. However, trauma-informed therapeutic care recognizes "the impact of violence and victimisation on psychosocial development and coping skills" and seeks to "create a safe, trustworthy treatment setting in which choice, collaboration and empowerment are emphasised." Exhibit B, p. 7. Because Brok carried shame and humiliation about his own abuse, he was unable to disclose the events that negatively impacted his life and led to his

offense conduct.  Trauma-informed care, as opposed to traditional treatment for sex offenders most likely provided in federal prison, would benefit Brok because,

> Rather than focusing on specific symptoms as "presenting problems," a TIC approach views a history of trauma not as a discrete event but as a defining and organising set of experiences that deeply influence the core of an individual's identity (Creeden, 2009; Harris & Fallot, 2001).  Understanding how traumatic events impacted the client's fundamental assumptions about the world, the clinician sees as a salient component of therapy the construction of new ways to organise and understand coping skills, behaviours and relationships.  By understanding the meaning attached to traumatic events and early relationships, the clinician can conceptualise how interpersonal behaviors were once adaptive in the abusive childhood environment but now prove to be unhealthy or harmful across various domains of adult functioning.  TIC emphasises a holistic understanding of the individual in the context of his/her collective experiences; maladaptive (irrational, aggressive, self-destructive or abusive) attempts to cope are reframed as survival skills that were once necessary but now interfere with the ability to establish healthy interpersonal relationships and boundaries. By using a strengths-based approach to growth and mastery, we can help clients prevent problematic behaviours, choose healthier relationships, deal with crises more effectively and parent and protect their own children in a more nurturing and responsive fashion.  Through this corrective experience, we can help interrupt the often intergenerational cycle of trauma and victimisation (Harris & Fallot, 2001). Exhibit B, pp. 7-8.

The entire objective of trauma-informed care is to assist in mitigating future potential to reoffend.  Exhibit B, pp. 9-10.  Brok has not had the opportunity to participate in this form of therapy.  Therefore, to incarcerate him for the rest of his life, at such a young age, without ever providing him the opportunity at treatment, would create a harsh and unreasonable result.

### *A Guideline Sentence of Life Imprisonment Violates the Eighth Amendment*

The Eighth Amendment to the U.S. Constitution states, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const.amend.VIII.  A punishment will be deemed "cruel and unusual" not only when it is "inherently barbaric," but also when it is "disproportionate to the crime."  *Graham v. Florida,* 560 U.S. 48, 59 (2010); *Hamelin v. Michigan,* 501 U.S. 957, 997-98 (1991).   The imposition of

a guideline sentence, that acts as a life sentence, on the facts of Brok's case and in light of the § 3553(a) factors discussed above, is unconstitutional because it is an excessive sanction.

The Supreme Court has held that executions of mentally retarded criminals amounted to "cruel and unusual punishments" within the meaning of the Eighth Amendment. *Atkins v. Virginia*, 536 U.S. 304, 321 (2002). Sentencing a mentally retarded person to death was found to be excessive because mentally retarded people "do not act with the level of moral culpability that characterizes the most serious adult criminal conduct" because of their disabilities in areas of reasoning, judgment, and control of their impulses." *Id.,* at 306-307. Although Brok is not mentally retarded, the trauma caused by his childhood experiences affected his brain development and therefore affected his reasoning and judgment.

## CONCLUSION

Brok Chase has a troubling history of abuse and psychological impairment that ultimately led to the instant offense. Given the history behind the legislation concerning sexual exploitation of children, the guideline sentence of essentially life imprisonment is unnecessarily excessive and violates the Eighth Amendment because it is cruel and unusual punishment. Such a sentence would be incongruent with his offense and the overall goals of sentencing outlined in 18 U.S.C. § 3553(a). Based upon the foregoing, a sentence at the statutory mandatory minimum term of 15 years' imprisonment, on each count imposed to run concurrently with each count, would comply with the statutory goals of punishment.

DATED: June 30, 2016                              //s//
                                                  LISA A. PEEBLES
                                                  FEDERAL PUBLIC DEFENDER
                                                  Office of the Federal Public Defender
                                                  4 Clinton Square, 3rd Floor
                                                  Syracuse, New York 13202
                                                  (315) 701-0080

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
*********************************************

UNITED STATES OF AMERICA,

    V.                                            **CERTIFICATE OF SERVICE**

BROK CHASE,                             CASE NO. 16-CR-086 (BKS)

            Defendant.

*********************************************

    I hereby certify that on June 30, 2016, I electronically filed  Defendant's Sentencing Memorandum  with the Clerk of the District Court using the CM/ECF System, which sent notification of such filing to the following:

    1.    Lisa M. Fletcher, Esq., AUSA

    2.    Janna Kulakowski, USPO

DATED: June 30, 2016                    Respectfully submitted,

                                        LISA A. PEEBLES
                                        Federal Public Defender

                      By:    S/Melissa A. Tuohey, Esq.
                                        4 Clinton Square, 3rd Floor
                                        Syracuse, New York   13202
                                        (315) 701-0080